Good morning, everyone. How lovely to see you all. And with that, we're going to call the very first case, and it is Appeal 22-3190, Protect Our Parks v. Pete Buttigieg. Come on up, Mr. Epstein. How are you, Professor? I'm out in about 15 minutes. Now, I want 15 to reserve five minutes of time. Oh, you've got it. I don't know how I manipulate the clock in order to achieve such stupendous... It's a very clever item, and I will stop you. Oh, I'm sure of that. I will leap off the bench and push you back. Okay, thank you very much. Hear that? That goes for you, too. May it please the Court, my name is Richard Epstein, and I'm counsel for the appellants in this case. We have three separate causes of action that we're trying to address in the 15 minutes. The first of these has to do with the summary judgment that was issued by Judge Blakey against us in January of 2022. The second has to do with the reprise over the public trust arguments that have been made several times. And the third has to do with the review of the denial of the preliminary injunction that this Court issued in July this year. So, let me start with the first. What happened is... Could we start with the last? What, the environmental case? No, but could we start this way? If we begin with the assumption that we still agree with reasoning in our decision denying the preliminary injunction, what, if any, of the federal claims remain here that were not addressed and decided in the prior appeal? I think the prior appeal pretty much exhausted the waterfront on the claims that were presented. The arguments that we have with respect to that is we think there were some serious mischaracterizations in the earlier opinion about the way in which this thing went. I thought to put that off to last, not because it's least important, but there has been no record whatsoever on the first of these claims having to do with the question as to whether or not they satisfied all the condition precedents in the contract as to whether or not they're entitled to close as they did on August 16th, 2021. And it was a very odd proceedings. What happened is there was an exchange of letters, which is the only information that we have on this, in which we said that we did not think that they satisfied all of the condition precedents. They sent several responses to us, and then we filed our papers with Judge Blakey. They were filed on January 5th, and on January 6th, the next morning, he issues a summary judgment against us, does not allow us the opportunity to amend our complaint, which we did not need to do, and he denies us our case on the grounds that we are pleading a third-party beneficiary count, when in fact we never pleaded that at any point in our particular case. What we pleaded is this was another version of a derivative action or an individual action to stop the city from essentially entering into a contract, which was disadvantageous to it, because all the condition precedents that had to be satisfied before they could get forward were in fact not satisfied. And so what we'd like to do is to go through the various issues that we put in that case in order to make clear why it is we think this is a valid concern. Well, it turns out that the basic contract has three major provisions that I'd like to address. The first of these has to do with the question of did they receive sufficient funds in order to close the deal with respect to the construction. The second is whether they had created an endowment for the sole purpose of dealing with this issue, which was sufficient to cover the future cost. And the third was whether or not they had to revisit the issue of whether these conditions precedents were satisfied just before they closed. So before you get into those three points, I would appreciate your spelling out a little more how this is a derivative action. It's obviously not a corporation. You're not shareholders of a corporation. It's not, as previous opinions have held in this case, it's not a common law trust where you're beneficiaries. How do you see it as a derivative action? Well, it is exactly the last. If you go back and look at the precedents in this state, what they say, and we quote the briefs in the opinion, is that this is, in fact, a situation where the citizens are entitled to block any transaction made by the state. I don't see any authority from Illinois that says that. We cite the cases in Illinois. I looked at those cases. I just don't see where that turns into a sweeping citizen's right to sue that would go well beyond federal concepts of standing. Well, the point is the standing in the case is not achieved by this. It's achieved by what we did with respect to our general pleas and with the supplement. Standing needs to be addressed one claim and one form of relief at a time. So you still have to, well, with the derivative, the so-called derivative claim, go ahead. Yeah, no, but it's the cases say, as they did with respect to PEPI, that either you allow some citizens to maintain these particular case or, in fact, the redress will not be possible. What do you view, I'm sorry to interrupt, what do you view as your best Illinois case to support the contention that you're making? Well, I mean, I don't remember the names right now, but they're cited on the first two pages of our brief. Well, which pages? Well, I mean, PEPI certainly does this because what it said was, when it overruled the earlier case, we have two alternatives. Either we could deny citizen standings, and we understand you can't get into federal court on that. We didn't try to do so. Either you deny citizen standing and you have no remedy whatsoever, or you allow citizen standing. So the last time around, when we were up here, the standing arguments were decisive. The case had not completed correctly. At this point, there's no doubt that we have essentially federal jurisdiction over these cases. And as they did in the Lake Michigan case, they decided not to look at the federal claim first, but they looked at the state claim having to deal with the public trust doctrine. And what the alternative is, we're just trying to say that this agreement turns out to be one that was not satisfied. And if we cannot raise this charge, then in effect, nobody whatsoever can challenge anything that's being done by the city, even when it turns out that the claims that are made in this case show that everything is seriously askew. Well, I understand that frustration. It does happen in quite a few cases where standing is lacking. I will say I'm having trouble squaring your reliance on PEPC with what then Judge Barrett of our court wrote in the first round, where she says that you're relying on PEPC, and she says their argument disintegrates however one reads more than the snippets they cite. PEPC is particularly devastating, she goes on to say. I'm sure you know the sequence. She's flatly wrong. Inexcusably wrong. Let me explain why she is wrong. It turns out we didn't quote snippets, she quoted snippets. What we did in effect was to quote three major passages in that opinion, the first of which said to give meaning and vitality to the clause, you must allow citizen standings to challenge it. The second one is the exhaustive list of factors that went through in this. When has the Supreme Court ever said that there always must be some default citizen standing? It seems to me that there are countless cases. We're not getting standing in federal court on the citizen's grounds. But as Judge Hamilton said, you have to tie it to the particular claim. You have standing for some claims, but this one, based on a contract between A and B, of which you are not a third party beneficiary, however you recharacterize it, you're just a stranger to that action. No, we're not. This is a situation done by a public body. As PEPC said, that public body turns out to be a trustee for all citizens. We are essentially saying that they're both aggregate, rather derivative and individual standing on this particular case, because otherwise what happens, you'll never pick up the clam and look to see what's underneath it. And in fact, what's underneath this is a massive irregularity. If you look at what Justice Blakey said, he did not talk about standing a jurisdiction. He gave a final judgment on the merits against us in this particular case. And the only way he could do that is to assume that we had standing. Well, but he didn't. You certainly understand that we need to make sure all that is covered. I understand, but this is... Whatever Judge Blakey who... Well, we understand that, but whatever happens in this case is so long as we get into federal court this standing, and then what happens is the claim that we're raising is either individual derivative ability to account for it, because otherwise what you're saying here is we're alleging very substantial irregularities with respect to this case. And we're saying that but nobody can view it. This is not the way constitutional government works. And so what are the mistakes that they made? Well, the first one is they said they just had to receive some money. They said they had received $482 million on a 485 base. That was an unordered account, $3 million difference. And their view is it was okay to receive the money, but you didn't have to save it or put it into a special account. Their position was you could spend it on other things. They do not have that money in the particular account. And so that's a clear breach, we think, of what's going on. We cited in support of that Wood v. Wadey-Duff-Gordon, a case which has been adopted in Illinois. And it all says that you have to be efficient in the way in which you do it. This is a security agreement. If you receive the money and dissipate it on other functions, it doesn't provide security. That's speculative. No, it's not speculative. Have you any idea of what those functions are? Do I have any idea of what? Of what the functions are that the money was spent on? Yes, the money, we don't, but it doesn't matter. The point is it's not available. That's a build to build. So, Mr. Epstein, can I ask you a question about this taxpayer derivative theory? I confess I've never seen an actual viable relief, one, on this theory. But do you think that if you're trying to that there's anything like the business judgment rule that would apply to government officials who may decide, for example, well, we have this contractual right, but we don't want to insist on it? No, there's not in this particular case. Absolutely rigid. No, not rigid. The first thing is they refuse to claim that there was any waiver of the particular condition in this case. So they're standing on the original contract. And secondly, this is a case of a clear breach of a specific crudity. It's not a case of judgment whatsoever. Any corporation that has, let's say, a contract with its supplier of essential inputs has to have the discretion to waive or modify contracts, right? No, that's not correct. It's not? No, because some cases time is of the essence. And in this particular case, the contract affords a remedy to them. If they cannot meet the condition precedence, they're allowed to defer performance of this particular contract without penalty. I'm struggling, Professor. What? I'm struggling with the idea. You want to borrow from corporate law this notion of derivative relief on behalf of shareholders. Well, that's what the state of Illinois does. Well, it has referred to it. I haven't actually seen cases where relief was one. And I don't know how you have standing in federal court on that. But put those questions aside, if you get to the merits, in any corporate law setting, management, here we would say the government officials, has pretty broad discretion, not complete, that's why there is such a relief available, but broad discretion to use their judgment in the best interests of the corporation. And that can include choosing not to insist on strict compliance under a contract, right? That is not correct. That's an extraordinary assertion. That's an extraordinary rule does when it turns out that there is some one definite standard. This is a case in which the contract contains a condition precedent, which is strict. And a corporation can never waive a condition precedent? Well, they can always waive it if they do it. But what happens is if this is a derivative suit, which we're bringing, and they waive it, they have to show in fact that they're getting full consideration from it. The reason the clause is put in there, and the reason the clause is put in with respect to the endowment thing, is to make sure that the city is not going to be on the hook for many, many dollars. Now at the endowment, they take the utterly implausible position that putting $1 million into an endowment fund that required at the time $470 million was in fact to endow a fund. I want to back up though and get you to explain to me, whenever the city of Chicago enters into a contract, I'll just use the city. It could be the park district. It could be anybody, but the city. Let's say they enter into a contract with a company to provide snow removal services. Are all the taxpayers of Chicago derivative beneficiaries of that contract because the snow removal will allow them to drive down the streets? They are derivative, but they have to have a cause of action. They sue the city if it is late in the payment, or the contract doesn't furnish enough trucks, or some flaw. I'm trying to figure out which contracts fit in your group of derivative enforceability, and which contracts fall outside that line. This is a contract on a major issue in which we're claiming on the paper record that this is serious default. You're saying it's just big, but we understand. We see plenty of big cases. No, it's not just big. It's a strict condition precedent. When there's strict condition precedents, those are exactly the kind of cases for which you should allow relief because it's not going to be discretionary. If the counterparty to the contract wanted to get out of it, then I think you've described a perfectly good way that they can get out of it. It's the strangers to the contract that I'm worried about. No, it turns out that it is not the case because what will happen in this particular case is then there's another clause, just to put it at the end, which says they have to do the financial review again before they can close. Absolutely standard. These are non-waivable provisions, and they never did the second review of this case at a time when we knew that the expenses involved in this case had, in fact, gone up. I understand the disconnect that you see, but what I don't understand is why, as a matter of the law of contract, that allows a perfect stranger to come in and upset the deal if both parties are willing to waive- Because the answer is ours is not a breach of contract claim. Ours is a claim for breach of fiduciary duty, which, in fact, under Drosky, every single person could raise. Now, you're talking about cases where people might want to raise it, but those are exactly the cases where there's no probable reason and nobody has ever done it. What I could say, there has never been a case like this one where there has been such a fast differentiation. The basic situation, if you put all the numbers together, is there is probably over a billion dollars shortfall in this particular project that they continue to build, and this is simply not tolerable when you're running this kind of a situation. Did you say one million or- No, billion, because they have $1 million in the $470 million trust, and the building cost had gone up by at least $200 million, and this is as of two years ago. There are no updated financials that have been released by the Obama Foundation. We don't know anything that's going on. I'm going to stop at this point. I'd like to ask you one more question. I'm sure the presiding judge will be courteous to all counsel here. My question is, if this case is not moot, what would injunctive relief look like at this point? At this point in time, you would have to stop all construction until one could satisfy the condition present. There is no option under this a complete prohibition on completing the construction on other grounds apart from the financial considerations. Be more technical about it. On the environmental claims, we are claiming that the original preliminary injunction was incorrect and should have been decided the other way. That does not require- Do you want the construction dismantled? No. That may be ultimately the case, but at present, we're not asking for that. We're asking for a complete environmental impact statement to be performed and in the end to slow this particular production. In other words, you want a complete stop? I'll stop. To the building. No, not you. We want to stop the construction until they prove that it's consistent with that. We want to stop the construction until they prove that they're in compliance with the public trust doctrine. They are not because all they can say is that it is legislatively confirmed and they ignore all the constitutional constraints that are found in PEPFAR. Okay. Now, I will add what we took up and I just want you to know that I didn't hear you and when you said one million, no. You said one bill and I understand that. I had misheard you. Okay. I'm sorry. No, it's me, not you. Okay. Thank you very much. Okay. Okay. Thank you. Bye-bye. Bye-bye for now. Uh, come on. Who's coming first? Ms. Tischer? Good morning, your honors. May it please the court. My name is Elizabeth Tischer. I represent the city of Chicago and will also be presenting argument on behalf of the Chicago Park District. This morning, I will be addressing the state law public trust, non-delegation, all traverse action and constitutional claims. Ms. Tacey Flint will be presenting argument on behalf of the Barack Obama Foundation and will be addressing the leave to amend issue regarding the breach of contract, breach of contract claim. And Alan Brabender will be presenting argument on behalf of the federal defendants and will be addressing the federal claims. Okay. This appeal marks the third time plaintiffs seek this court's review of claims challenging the construction of the Obama Presidential Center in Jackson Park. And in this iteration, plaintiffs add nothing new to the theories this court has already rejected. Instead, they ask this court to depart from every decision that has come down against them. The district court's judgment should be affirmed. Turning first to the public trust doctrine, the Illinois Park District Aquarium and Museum Act easily disposes of that claim. In 2016, the General Assembly amended the Museum Act to include presidential centers along with the other museums that could be located in public parks. That purposeful act reflects the legislative intent that presidential centers, like other museums, serve valuable public purposes, including furthering human knowledge and understanding educating and inspiring the public and expanding recreational and cultural resources and opportunities. That act also reflects the General Assembly's recognition that presidential centers are legitimate uses of parkland. The Obama Presidential Center fits squarely within the Museum Act's explicit authorization that municipalities may contract with private entities to build and operate presidential centers in public parks. The city here has contracted with the foundation to build and operate the center, which will, among other things, house a museum telling the story of the Obamas and featuring artifacts and records from Barack Obama's presidency. Protect Our Parks argues that it is pure fabrication to say that under the use agreement the city retains ownership of the site. How do you address the argument that this case is like that in Lucas and that a 99-year lease for $10 is not materially distinguishable from an outright transfer of property? Your Honor, the use agreement in this case, which is was attached to plaintiff's complaint and incorporated in there as well by reference, and when we do have a contract that is attached to a complaint, any contrary allegations in the complaint that are contradicted by the contract, in that case it's the contract that controls. So in this agreement, in this case we have, the use agreement has numerous provisions that demonstrate that the city will actually maintain control over the site, unlike in the Lucas case. So we have, the city will retain ownership of the site, will require rights to the site improvements, sorry, require ownership, title to the buildings and site improvements. The foundation is obligated to operate the site consistent with certain, consistent with, as the presidential center, as specified in the use agreement. And there are also numerous requirements for the center to operate in accord with the free admission requirements of the Museum Act to open the grounds during normal park district hours and to operate general admission requirements consistent with other museums and public parks. So all of those features of the use agreement demonstrate that it is, it will be the city that will be maintaining control of the where it has ceded full control of the site to the foundation. And regardless of whether we term this as a lease or use agreement, it is the terms that demonstrate here that the city will retain that control. Are you arguing that we really just shouldn't see this as a private use of the has just ceded control as though it was Boeing or, you know, the, you know, ComEd or somebody who took it over? Well, the Museum Act does authorize municipalities to contract with private entities. So it's true that it's the foundation is a private entity that is building and operating the site, but it's still, the city is still maintaining control over the site as specified. And that's because the title goes over to the city as soon as it's built? So the city retains title to the site itself and will acquire title to the buildings and site improvements upon their completion. And so there's nothing in the Museum Act that indicates that this type of arrangement is improper. And this is precisely the type of arrangement that other museums and public parks, this very type of use agreement with the similar conditions that govern the other types of museums and public parks, which are also operated, you know, constructed and funded by the Obama Foundation here. And I would also like to... How do you tie that to the appellant's argument that this contract between the Obama Foundation and the city is, you know, has been carved off beyond any kind of judicial scrutiny, that it's just out there sort of as its own law unto itself? Well, with respect to the public trust doctrine, the nature of the contract, we're not looking at the details of the contract. We're really looking to see if it's authorized by the Museum Act itself. And so even under the Museum Act, the General Assembly did authorize 99-year leases. And of course, we say in this case, it's a use agreement, not a lease. But even if this were a lease, the Museum Act does authorize leases, and under two conditions, that the foundation operate, you know, hold the grounds open during normal park district hours, and that the city retain a reversionary interest. So those two aspects of the use agreement, we have those conditions here, and we even exceed those conditions here. So when we're looking at the public trust doctrine, that's all we're concerned about is whether the Presidential Center was authorized by the Museum Act, and it was, and to the extent this court were to, you know, look to see if this, to decide that this release, and rather than a use agreement, that those conditions would be satisfied. And that's all that matters under public trust doctrine. As far as if, you know, if there were some, if this court, to the extent this court has concerns about the breach of contract claim that plaintiffs raised in their motion for leave to amend. Which I insist is a derivative claim, so maybe you should address that. That's what you should be addressing. Right. And my colleague, Ms. Flint, will be prepared to address questions regarding the breach of contract claim, but I will reiterate, as we do say in our brief, that there was, they, plaintiffs failed to state a claim for breach of contract, because they are not third-party beneficiaries, and do not have, otherwise have standing to challenge that, the, you know, to bring a derivative action, or any sort of other taxpayer action. Ms. Tischer, can I just ask the, to follow up on one of Judge Wood's questions. The appellants are attacking this as, in essence, a private use. Would you agree that, for example, if what we were dealing with was a contract to set up a use agreement, let's say for a casino, or for some lakefront condominiums, that there would be potentially viable public trust claims here? Well, what we would look at in any case would be what the General Assembly authorized. So if the General Assembly did not authorize, you know, a casino or some other type of use like that on public parkland, then we would be looking at this case a little bit differently under the public trust doctrine, and we would be scrutinizing that to see if there was, if it served a valuable public purpose. But that's not the case here. We have a specific authorization within the Museum Act. And other museums within the park. That allow, that authorizes museums, and including presidential centers, in public parks. And that is what PEPC tells us here, that we are supposed to be looking at here. And PEPC is the case that controls here. And in that case, the court was construing the same 1869 Act that created Jackson Park. That case involves Washington Park, but it was the same 1869 Act. And the court said that where the General Assembly has created parkland by statute, it is authorized to reallocate that parkland to a new use. And all the court is looking at in those cases is whether there has been a sufficient manifestation of legislative intent. And in this case, we do have that manifestation of legislative intent very clearly to authorize presidential centers in public parks. And that the city of Chicago, municipalities may contract with private entities like the foundation. And that is consistent with how other museums and public parks have operated. And we certainly do not have a private use in this case. I mean, it's, the foundation is a private entity, but it's a use that will, its primary purpose is to serve the public. And so we have numerous findings. We have findings from the General Assembly that show that presidential centers provide, you know, valuable cultural, educational, and recreational opportunities. I'm sorry, your Honor, I see my time is up. I would just like to reiterate that we ask this court to affirm the district court's judgment. Thank you. Thank you. Hello, Ms. Flint. Morning, your Honors. Don't, don't, don't run. Please. Morning, your Honors. Tacey Flint on behalf of the Barack Obama Foundation, I'm here to address the court's decision denying leave to amend the complaint to add the breach of contract claim at the unjust enrichment claim. As the court has already raised, there's no right for a stranger to the contract as the plaintiffs are to sue on that contract. Now, I did hear Mr. Epstein say at one point, this is not a breach of contract claim. This is a breach of fiduciary duty claim. That is not what is reflected in the proposed amended complaint that the plaintiffs filed. They claimed a breach of master agreement, which is a contract between the city and the foundation. And they claimed that specifically two provisions of that agreement were breached. But isn't it the case, though, that when we look at a complaint, complaints don't need to plead legal theories. And so if in the facts alleged in the complaint, one can discern some problem with a breach of fiduciary duty, wouldn't that be sufficient? I don't think so, Your Honor. It's not just that the claim was captioned a breach of contract claim. It is that they cited two provisions of the contract and said those provisions were not complied with. So looking at the actual allegations as well as the caption, I don't see any way to read this other than as a breach of contract claim. But regardless, the plaintiffs- So who do you think owed a fiduciary duty to whom, if anyone? The city or the park district or the general assembly? I mean, you know, like if there's a trust that's set up in plain old private law, you can see who's the settler, you can see who's the beneficiary, you can find out the corpus, and you can trace all of this through. But I'm having trouble. I guess the beneficiaries are the public at large. It's kind of an expansive notion of public standing. Right. There is no fiduciary duty as between the foundation and the city or the parties to the contract. Perhaps the theory is that the city is a fiduciary to every taxpayer within the city. That may be- If that is the case and everybody has standing- Yeah, you're in trouble. It's a recipe for judicial. It's a recipe for the judiciary to govern the city. I certainly agree with that, Your Honor. And this court has already resolved that such claims are not permissible in the provisions that you cited, Judge Wood, that you quoted from the 2020 opinion, saying that even if under Illinois state law, in that case, the court was talking about PEPC, there is a viable claim. There is state law standing to bring a claim for a public trust claim. That still doesn't get you into federal court. Now, none of the cases they've cited have established standing to bring a contract claim in the shoes of the city as if it were a derivative claim. To give them their due, you have to analyze this and say, is there just any way you can stretch it into a breach of fiduciary duty or some kind of- I confess I have trouble envisioning it but that's what they're trying to do. Right. And I don't think I have not seen any precedent that supports that move. Now, when Your Honor, Judge Hamilton was asking Mr. Epstein about whether there's some kind of business judgment rule if such a claim exists as the taxpayer derivative claim for a breach of contract, Mr. Epstein said, no, because this is a strict condition precedent. If what he meant was the city could not waive the conditions that are at issue in the claim, that's incorrect. The contract is explicit in section 12 of the master agreement in saying that the city may waive those conditions. So even if, contrary to fact, the conditions had not been satisfied, that would not establish a breach of contract. The contract can still be performed and complied with by both parties even if the conditions were simply not met. However, the proposed amended complaint alleges itself that they were, that the certification required by section 12H was provided, that the endowment required by section 12J was established. But does that mean that you were reading this as just, you know, the paperwork got filed to create the endowment and then you threw a million dollars into it and done for now? I mean, there was some magnitude of money that was supposed to go into that endowment to assure performance of later obligations. Not according to the contract. The contract sets forth conditions that must occur prior to closing and that is the establishment of an endowment. Just filing the papers then, not establish in the sense of, you know, create some separate, you know, fund or entity that's going to hold the money in any amount. You could have put 10 cents in it, it sounds like. Section 12J merely requires the creation of an endowment. Obviously, this is occurring many years before the presidential center will be completed and opened and, you know, the parties expect. Certainly, the plaintiffs have not raised any allegations to suggest that the ongoing construction of the presidential center, which is in full swing, has faced any financial difficulties. Does the foundation have an estimate about when this is going to be finished? Yes, 2025 is the estimate. 2025. And, yeah, so the foundation says 2025 and at that point all of these other use agreements will come into effect? The use agreement's already in effect. It's requirements for the hours of operation of the museum and so forth will come into effect once the museum is open. Okay. Okay. Thank you. Thank you, your honors. Good morning, Mr. Brabender. Good morning. May it please the court, my name is Alan Brabender. I'm with the U.S. Department of Justice. I'm here to address the federal claims against the federal defendants. And as this court knows, this court has twice rejected each of the federal claims against the federal defendants in precedential and published opinions. That's what I wanted you to talk about. You've briefly raised the argument that even though we understand that the factual predicate at the preliminary injunction stage is often different from what might be there once there's a full record and the permanent injunction stage, there was a stipulation in this case that, as I read it, prompted the district court to think that there actually wasn't anything else that needed to be explored. So I would like you to talk about the question whether the preliminary injunction opinion in this instance is dispositive of this permanent injunction appeal. It is. And it's because, as you say, the stipulations that were agreed upon below. After this court affirmed the denial of the preliminary injunction, the plaintiffs abandoned all additional proceedings in district court. They agreed to a stipulation that it was proper to enter final judgment at summary judgment based on the preliminary injunction briefing and the administrative record. And presumably the record, yeah, which would include the environmental assessment, I assume from the point of view of the federal, the historical assessments, all these other assessments, right? That's correct. So this court during the preliminary injunction stage had all the relevant documents it needed to address the federal claims. There's no document before this court now that was not before the court during the preliminary injunction proceedings. And is there any indication that if the plaintiffs had gotten their amended complaint and things, contrary to the stipulation, I'll comment, but suppose though they'd gotten their amended complaint, are there any facts or lines of inquiry that they have ever raised that they pursued? Not with respect to the federal claims, Your Honor. The same claims are being made now. In fact, it's just a subset of claims being made now on appeal that have been made in the other, the prior proceedings on the preliminary injunction. So the record is the same. The legal issues are the same. And plaintiffs stipulated below that it was proper to enter summary judgment based on the preliminary injunction briefing. So the district court then did enter final judgment based on its preliminary injunction, based on its preliminary injunction opinion. On these facts, this is the poster child of a case where it is proper to apply law of the case to a situation where there was a ruling made during the preliminary injunction stage. You would agree though that that needs, if we were to agree with you on that point, it would be pretty narrow on this case as opposed to more general concerns about preliminary injunction appeals versus permanent. Yes, I think the law of the case doctrine needs to be applied on a case by case basis for every case. It's just so happens that this case is again the poster child of a case. As I understand the federal agency's positions on this, the fulcrum has been in essence, the site selection was up to local officials here. And we're not second guessing that basically, right? And I guess my question is, are there circumstances where U.S. agencies, whether it's highways or park service or fish and wildlife or whoever, would be in a position to just say no. To say no, we're not going to make any federal dollars available, for example, to move the roads. Can I just supplement that question? This is concerning me as well, exactly what Judge Hamilton mentioned. If, just for example, the Department of Transportation had said not a nickel, wouldn't that de facto have been a site veto? No, it wouldn't. First of all, I think the Transportation Department has very limited authority, right? If the request meets the statutory criteria, it must grant the funds. But if it didn't, if the request didn't meet the statutory criteria, that does not mean that the foundation couldn't build the center in Jackson Park. They may have to reconfigure the plans a bit, but, or they could get private funding, they could get funding from the city, so it's not necessarily true. So your position is they could build the roads themselves, maybe with state funds, maybe with private money? Correct. Okay. And I see you have 20 seconds left if there are any other questions the Court has. Is there anything more you want to tell us in your 16th? No, Your Honor, we would rest on the briefs and the explanations denying the federal claims in this Court's prior opinions. Thank you. Okay. There's a great deal to talk about, but let me first start with the question of whether or not they're standing. Here is a quotation from an Illinois case. It is established that a taxpayer can enjoin the business... Which Illinois case, please? What's the name of the Illinois case, not Illinois. It's Malachres v. City of Belleville. Okay. So why is that pertinent to federal standing? The state courts, we know, can open their doors. Because what happens is, we do not need to establish federal standing for this council as long as we have federal standing on others. See, I think you may be mistaken as a matter of law. This is exactly what happened. No. Supplemental jurisdiction. You look at the Michigan case, and what they did is they had federal jurisdiction. Who's they? Is this the Supreme Court who did something like that? No, this was the district court in Judge Aspin's case. Yeah, that's what concerns me. No, but this is beyond dispute, I think. This is a Friends of the Course case where we allege a federal claim. We have supplemental jurisdiction. But that's all the same cause of action. There are different theories that you've raised here. And each, as Judge Hamilton said during their first argument, the Supreme Court has been very strict on standing in recent years. And they make it clear that you have to... You've got to separately establish standing for damages and for injunctions. You have to separately establish standing for different theories of the case. I do not think there's a single Supreme Court case which has reversed this decision. Let me finish what it says. Enjoying the misuse of public funds based on a taxpayer's ownership of such funds and their liability to repunish the public treasury for the efficiency caused by their misappropriation thereof when it's illegal. So this answers the question. If you're trying to talk about your snow removal case, there's no allegation whatsoever of so it's wholly different from this one where there's a strict condition precedent. The duty of good faith judgment only applies when there's a sphere of action. It does not apply ever when it turns out there's a strict condition. So it turns out the local authority on the state... What authority do you cite for that proposition? Well, every standard textbook on business judgment rule always says it's a derivative rule when there's a matter of judgment to be decided where there are pluses and minuses on both sides. In a quote, strict condition precedent. Is not something which is... You lock yourself in to a suicide pact if you're the corporate manager. No, that is incorrect for two reasons. One is that they did have an option which they never exercised which is when they don't have the funds they can defer starting date without penalty. They're not locked in on that. Secondly, they could try a waiver argument which we could then challenge on the grounds that it's insufficient but they made no waiver argument in this case. They insisted that they complied with both conditions and that is just incorrect in this case under every standard view of doctrine. Now let me then turn briefly to the public trust doctrine. The plaintiff's position is incorrect. The defendant's position is incorrect. But they say this is only a matter of legislative intention and once the Museum Act is clear, all is done. The whole purpose of Koepke was to indicate not only did you have standing at least in state court but there was a constitutional action. The final paragraph in this says you have discretion within constitutional constraints. The constitutional constraints on this are to make sure that there's not a massive giveaway to a private party which we have alleged is exactly what takes place in this case. It turns out the defendants say, well, this is a use agreement. It is not a lease. Well, there's absolutely no term that they cite in this case which was not in the previous lease and if it's a matter of construction, if you have a doctrine and then re-label it and don't change the terms, this is simply a verbal situation and it turns out that the 99-year lease has to be subject to this kind of restriction and they have not done anything to it. They've ignored the constitutional stuff and they've ignored all the stuff about the particular transaction. On the environmental claims, why do we think that this is not law of the case? Well, what the case would happen in this case was quite extraordinary. The first time this case came up, the decision was we have to examine the question of whether you could locate the Obama Presidential Center in Jackson Park. All the hearings that took place were against that and then the moment the thing was over, 16 months later, they changed the definition so as to make sure you don't have to consider alternative sites. If they have to consider alternative sites, they're dead in the water. Who's they, by the way? It turns out the city and the federal government... Why did the city of Chicago have any... Under what law did the city of Chicago have an obligation to consider sites other than Jackson Park? Okay, well, I will tell you. It's not the way. The way you put it... I'm asking that question. Well, the answer is... I'll answer it. They do not have... The federal government does not have... I'm not talking about the federal government. Why... What's the law you're pointing to? The law... That the city of Chicago had to consider Washington Park and, you know, DuPage County or, you know, whatever. The Cook County Forest Service... Well, the correct statement of the rule is the city can pick what it wants, do what it wants. The federal government cannot order them to consider it. But you're changing this. No, I'm not. I'm trying to answer it. The answer is the federal government... So the city of Chicago had no obligation itself to consider an alternative site. No, that is not correct. And the federal parties did. What happens is once the challenge is made under the Environmental Protections Act and under the Clean Air Act, Clean Water Act, whatever the Historical Preservation Act, the duty is the federal government can veto a particular site if it doesn't meet the requirements. It cannot force them to take another site. But the way in which the question is put that they make the decision themselves and we can't change it means effectively that every local project that uses federal funds is completely beyond federal review, even when it turns out... If you actually look at the two sites, the site that they have is a disaster. I would just add one point as I'm finishing. The way the district court did it is he made all inferences in favor of the defendant in a case which involved a summary judgment. We have exhaustive evidence that they were completely wrong. There's not a single sentence, not a single syllable in any of the opinions that is written and on a summary judgment which has looked at the inferences that might be joined in favor of the non-moving part. And that is just clear error. All right. I'm breathless. Are you? No. Standard MO. He's never worked. Okay. Thank you very much, Professor Epstein. Thank you very much. Everyone at that table, Ms. Tischer, Ms. Flint, Mr. Brabender, case is going to be taken under advisement. Thank you. Thank you. Thank you. All right.